

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

DARLENE MOORE,                    )
                                  )
                    Plaintiff,    )
                                  )
      vs.                         )     No. 02 C 5130
                                  )
CITY OF CHICAGO, et al.,          )
                                  )
                    Defendants.   )

## MEMORANDUM OPINION AND ORDER

Plaintiff Darlene Moore brought this action against defendants alleging violations of her civil rights under 42 U.S.C. § 1983. After fact discovery closed, defendants discovered what they consider to be material information that plaintiff failed to disclose. Defendants now argue that plaintiff's omissions and discovery abuses warrant the dismissal of her case pursuant to Fed. R. Civ. P. 37 and the court's inherent powers. For the following reasons, we deny defendants' motion to dismiss, but impose less drastic sanctions.

## BACKGROUND

Prior to addressing the parties' conduct during and after the discovery period, we briefly revisit the events that underlie plaintiff's action, as they are set out in her fourth amended complaint. She alleges that on September 11, 2001, she called the Chicago Police Department to complain about the conduct of construction workers who were on her neighbor's property. When police officers arrived, they arrested plaintiff, and in doing so they allegedly injured her right arm and hand. Plaintiff was charged with disorderly conduct, and some time after she was placed in a holding cell she began to suffer an epileptic seizure. She claims that her requests to see a doctor were ignored, and that her requests for medical

attention to her right hand and arm were also ignored. The charges against plaintiff were eventually dropped. Plaintiff alleges that as a result of defendants' conduct she continues to suffer pain and decreased mobility in her right hand, and that she cannot continue a career in nursing or perform the daily life activities that require the use of her hand.

Over two years ago we noted that the procedural history in this case was "somewhat convoluted." Moore v. City of Chicago, 2004 U.S. Dist. LEXIS 4267, 2004 WL 546743 (N.D. Ill. 2004). The passing of time has only exacerbated matters. The parties' conduct during discovery, and more significantly the post-discovery events, have affected the progress of this case. To determine whether or not the case should be dismissed, as defendants urge, we must examine in detail the information disclosed during and after the discovery period.

On October 14, 2002, plaintiff provided her initial disclosures pursuant to Rule 26(a)(1). In those disclosures she identified 11 medical providers, two prior employment supervisors, and family members who were fact-witnesses. On April 21, 2003, plaintiff supplied her responses to defendants' first set of interrogatories (def. ex. C). In response to interrogatory no. 2, which asked for her employment history and related information, such as positions held, wages earned, and reasons for termination, plaintiff disclosed five prior employers: Peoplelink Staffing Solutions; St. Mary of Nazareth Hospital; Claims Strategy, Inc.; Michael Reese Hospital; and Northwestern University Hospital. Interrogatory no. 3 asked for plaintiff's criminal history, focusing on any prior arrests, detentions or citations. Plaintiff objected to the question, and then stated that she had not been arrested in the ten years preceding the litigation, except for the arrest on September 11, 2001.

Interrogatory no. 8 asked plaintiff to describe any physical or emotional injuries she sustained, and whether she received any medical treatment for those injuries. Plaintiff

explained that defendants' conduct during her arrest and the subsequent denial of medical attention while she was in jail led to Complex Regional Pain Syndrome, which caused a loss of use in her right hand, limited range of movement in hand and arm, and deformation of her hands due to the shortening of her tendons. She asserted that she could not return to nursing as a result of the injuries. She also referred defendant to her Rule 26(a) disclosures for additional information regarding medical providers, care, and bills. With regard to her emotional and mental injuries, plaintiff stated that she experienced headaches with greater frequency, had difficulty in social situations, and suffered constant physical pain. She acknowledged that she previously suffered from depression, but asserted that she had never experienced depression so severe that it prevented her from working or enjoying life. She referred defendant to her Rule 26(a) disclosures for details regarding her psychiatric care.

Interrogatory no. 9 asked plaintiff to disclose any medical treatment she received prior to and after September 11, 2001, and to identify her treaters, the dates of treatment, and any treatment ordered. Plaintiff noted that she had received general medical checkups. She also disclosed a hospitalization for neck spasms related to an accident, and prescription for muscle relaxer and Tylenol for associated pain.

Interrogatory no. 13 asked plaintiff to disclose her civil litigation history. Plaintiff objected to the question, and then mentioned "Moore v. Dr. Ramesmy, 1998 C 8298," which was filed in Cook County Circuit Court, and that, at the time of her response, was still active. Plaintiff stated that she was involved in several small claims in her capacity as a landlord.

On June 2, 2003, plaintiff supplemented her responses to interrogatory nos. 2 and 3 (def. ex. D). She included a resume that noted her employment as a nurse at Ada McKinley Intervention Services. In the letter, plaintiff further stated that she was arrested for battery

approximately three or four years prior.    Plaintiff also provided tax documents which mentioned Ada McKinley, a Prudential life insurance policy, and other medical history.

On October 13, 2003, plaintiff supplemented her Rule 26(a)(1) disclosures. Three days later she supplemented her responses to interrogatory nos. 8 and 9 (def. ex. F). In response to interrogatory no. 8, plaintiff specified that the Complex Regional Pain Syndrome resulted in deformation of her "right hand," rather than her "hands," and that she also suffered pain and swelling in "her up [sic]" extremities. She continued to refer to her Rule 26(a)(1) disclosures for information about her medical providers, care, and bills. With respect to interrogatory no. 9, plaintiff additionally disclosed that she had suffered from epilepsy for approximately ten years and received regular treatment from her primary care physician, Dr. Benson. She further stated that she experienced migraine headaches for over 20 years and received treatment at a public health center, Cook County Hospital, Provident Hospital, and Michael Reese Hospital. She also noted that she had previously seen Dr. Swielihart Tan for treatment related to depression.

Plaintiff was deposed on October 21, 2003, and she then stated that a $40,000 income drop between 1999 and 2000 was the result of her decision to take some time off. When asked about her criminal history, plaintiff acknowledged that she was arrested for possession of a controlled substance and also for child endangerment. At her deposition plaintiff noted that she suffered from depression for almost a year as a result of an incident involving a physical confrontation at a former workplace. However, she could not recall the name of the doctor who made the diagnosis. She also described how she attempted suicide approximately 18 years prior to the deposition. In addition to seeing Dr. Tan for mental health treatment, plaintiff stated that she saw two other physicians, but could not recall their names. She did recall their

genders and where they worked.

Then, on January 19, 2004, plaintiff supplemented her medical records and billing statements. This included a report by Dr. Wiedrich about plaintiff's continued disability. On February 11, 2004, plaintiff provided Dr. Tan's address (plf. ex. A). On May 16, 2005, plaintiff subpoenaed the records of prior health treaters, including Dr. Tan, and provided these records to defendant. May 27, 2005, marked the close of fact-discovery. In September 2005, defendants contacted plaintiff and identified a number of issues that plaintiff did not disclose.

On September 6, 2005, defendants wrote to plaintiff and asked her to confirm whether she had seen five medical treaters not previously disclosed in response to interrogatory no. 9 (def. ex. L). Defendants identified these medical treaters after they obtained plaintiff's responses to interrogatories in an action she filed against physicians at Northwestern Hospital and against the Hospital itself in 1996 (def. ex. K). Defendants also requested that plaintiff confirm whether she had disability insurance, based on a form they acquired from Dr. Wiedrich. Plaintiff was also asked about two workman's compensation cases, a prior arrest for battery, traffic citations, and a number of civil actions, including the 1996 action noted above, that were not previously disclosed.

On September 15, 2005, plaintiff amended her responses to a number of interrogatories, including questions 2, 3, 8, 9 and 13 (def. ex. O). With respect to interrogatory no. 2, plaintiff listed the five jobs mentioned in the April 21, 2003, response, and referred defendant to her resume and tax documents. She also noted that she was not employed between February 1995 and April 1995, and then again from June 1995 to the end of the year. Plaintiff further added that she had been arrested for child endangerment, which she spoke of at her deposition. She also mentioned traffic citations she received. Plaintiff specified that she suffered pain and

swelling in her right upper extremities after her arrest. Her disclosures, related to her emotional and mental injuries, remained virtually the same as those made previously. She continued to reference her Rule 26(a)(1) disclosures for information about her medical treaters.

Supplementing her response to interrogatory no. 9, plaintiff stated that she received treatment for a torn muscle that she suffered in the 1980s while working at the University of Chicago Hospital. She noted that she received treatment, including mental health treatment by Dr. Robert Burton, after the incident at Northwestern Hospital that gave rise to her civil action. The physical injuries from that incident included "bruises and soreness to the left side of her body, her lower body and back." Plaintiff specified that she could not recall every treating physician she had seen, but noted that the records that were brought to her attention show that she was seen by Dr. Susan Bank, Dr. Richard Rovner, Dr. Ronald Krasner, and Dr. Darren Gitelman.

With respect to question no. 13, plaintiff disclosed the 1996 action against Northwestern Hospital, and described it as arising out of the incident in which Dr. Ramaswamy pushed her. She acknowledged that that action had been dismissed. Plaintiff specifically named three small claims actions in which she was involved in her capacity as a landlord. She further noted two worker's compensation claims, the first steaming from the torn muscle injury she suffered at the University of Chicago, and the second relating to Dr. Ramaswamy.

Defendants wrote to plaintiff on September 22, 2005, informing her that they received notes taken by Dr. Bank in response to subpoenas sent to Rush University Hospital (def. ex. R). In these notes, plaintiff informed Dr. Banks that in January 2000 she had been fired from her position as a nurse. Defendants requested that plaintiff amend her interrogatory response

to reflect this employment gap. Referring to a criminal history printout, defendants asked plaintiff to confirm whether or not she was convicted for possession of a controlled substance in 1989 and if she served 61 days in jail. They further inquired about a traffic accident, as well as several medical problems, including a 1999 diagnosis of chronic headaches. Defendants again wrote to plaintiff on September 27, 2005, and requested that she amend her answer to interrogatory no. 13 so that it reflected her seven worker's compensation cases, which defendants depicted as involving injuries to her hands. On September 30, 2005, plaintiff responded to defendants and emphasized that she answered their interrogatories to the best of her recollection, and referenced the documents produced in order to supplement any lack of specific recollection. Plaintiff verified that she was arrested in 1989 for possession of a controlled substance, but did not recall serving any time in jail, contrary to the criminal history printout.

On October 6, 2005, plaintiff amended her responses to interrogatory nos. 2, 3, 9, and 13 (def. ex. V). In response to no. 2, plaintiff specifically mentioned Ada McKinley Services, and also noted that she "was told that she was terminated because her work was not up to quality standards." Plaintiff also listed ten part-time temporary positions she held between 1991 and 1999. Maintaining her objections to interrogatory no. 3, plaintiff noted that the incident with her granddaughter actually led to charges for contributing to the neglect of a child, which were ultimately dismissed. She specified that she was arrested in 1986 for battery, but those charges were also dismissed. Plaintiff disclosed that in 1989 she was arrested for possession, presumably for a controlled substance, and that to the best of her recollection these charges were dismissed. In 1983 plaintiff was arrested for possession of a firearm without an ownership identification card. She believed that this charge was dismissed. Plaintiff further

noted that she was arrested in 1973 for theft, for which she plead guilty and paid a fine.

Supplementing her response to interrogatory no. 9, plaintiff stated that she had suffered a concussion in a car accident that occurred approximately 15 to 20 years prior to her supplemental response. She disclosed a fractured toe that she suffered about 10 to 13 years prior, and also a fractured "left lower extremity," which she stated occurred approximately 30 years prior to her response. Plaintiff further stated that she was hospitalized for depression in approximately 1989 or 1990.

Adding to her response to interrogatory no. 13, plaintiff disclosed a third worker's compensation claim that she filed in 1981 after she experienced chest pains while lifting a patient in a hospital. Plaintiff believed that she voluntarily dismissed that claim. She also disclosed several other worker's compensation claims, which she described as arising out of the chest muscle injury that she experienced while at the University of Chicago. Plaintiff stated that she did not realize that her attorneys had filed separate claims for each incident arising out of the torn muscle.

Similar to the nature of this case's discovery proceedings, the filing and briefing of defendants' motion to dismiss has also been protracted. Defendants filed their motion to dismiss on December 20, 2005, and a briefing schedule was set, pursuant to which defendants would file a memorandum in support of their motion by January 19, 2006, with plaintiff filing her response on February 2, 2006. Defendants filed motions for leave to file *instanter* their supporting memorandum on February 2, 2006, and then again on February 8, 2006, but failed to file that memorandum. On March 1, 2006, the court granted defendants' motion to file *instanter* their memorandum, with plaintiff's response to be filed on March 15, 2006, and defendants to reply by March 31, 2006. March 15, 2006, passed without any memorandum

filed by defendants. Not until March 31. 2006, did defendants file their memorandum in support of their motion to dismiss. Plaintiff filed her response on April 7, 2006, and defendants filed their reply on May 15, 2006.

## DISCUSSION

The court may sanction a party who fails to comply with procedural rules and court orders, to penalize the party and deter future non-compliance. Nat'l Hockey League v. Metro. Hockey Club, Inc., 427 U.S. 639, 643 (1976). For severe discovery abuses, the court may order the dismissal of a complaint with prejudice. Dotson v. Bravo 202 F.R.D. 559, *570 (N.D. Ill. 2001). Our authority to impose sanctions stems from Fed. R. Civ. P. 37(b) and (c), as well as from the court's inherent power. Krumwiede v. Brighton Associates, L.L.C. 2006 WL 1308629, *9, (N.D. Ill. 2006) (citing Chambers v. NASCO, Inc., 501 U.S. 32, 44-45 (1991)); REP MCR Realty, L.L.C. v. Lynch, 363 F.Supp.2d 984, 998 (N.D. Ill. 2005); Sonii v. General Electric, 2003 WL 21541039, *8 (N.D. Ill. 2003); Rhodes v. LaSalle Bank, N.A., 2005 WL 281221, *2 (N.D. Ill. 2005).

Dismissal is warranted only when there is evidence of willfulness, bad faith or fault on the part of the sanctioned party. Maynard v. Nygren, 332 F.3d 462, 467-68 (7th Cir. 2003); Patterson v. Coca-Cola Bottling Co., 852 F.2d 280, 283 (7th Cir.1988). Willfulness and bad faith relate to a party's intentional or reckless conduct. Krumwiede, 2006 WL 1308629, *9 (citing Long v. Steepro, 213 F.3d 983, 987 (7th Cir. 2000)). Fault "describes the reasonableness of the conduct–or lack thereof–which eventually culminated in the violation." Rhodes, 2005 WL 281221, *2 (citing Marrocco v. General Motors Corp., 966 F.2d 220, 224 (7th Cir.1992)). A court must find a party's willfulness, bad faith or fault, by clear and convincing evidence. Maynard, 332 F.3d at 468; REP MCR Realty, 363 F. Supp.2d at 999.

As noted above, the court may also order dismissal pursuant to its inherent powers. A court's invocation of its inherent powers has been described as a "draconian measure," and dismissal under those powers should be sparingly ordered. Dotson v. Bravo, 321 F.3d 663, 667 (7th Cir. 2003) (quoting Barnhill v. United States, 11 F.3d 1360, 1367 (7th Cir. 1993)). See also Chambers, 501 U.S. at 44 (stating that inherent powers "must be exercised with restraint and discretion").

Courts have conditioned dismissal on both the failure to comply with a discovery order, and willfulness, bad faith or fault (Hersh v. Capital Cities/ABC, Inc. 968 F.2d 1218, (7th Cir. 1992)), but a party need not violate a specific discovery order to invite sanctions. Royal Maccabees Life Ins. Co. v. Malachinski, 2001 WL 290308, *11 n. 11 (N.D. Ill. 2001). Violation of a specific order is not required because "litigants are presumed to know that deceptive conduct is unacceptable." Rhodes, 2005 WL 281221, *2.

The court has authority to fashion a sanction, and is not limited to those proposed by the moving party. Ty Inc. v. Softbelly's Inc., 2005 WL 326974, *6 (N.D. Ill. 2005) (citing Parker v. Pepsi-Cola Gen. Bottlers, Inc., 249 F. Supp. 2d 1006, 1012 (N.D. Ill. 2003); see also Reddick v. Bloomingdale Police Officers, 2003 WL 1733560, *9 (N.D. Ill. 2003) ("the court may fashion an appropriate sanction from a wide range of options, so long as the sanction is just and proportionate to the circumstances surrounding the violation"). Dismissal with prejudice is a harsh penalty, and prior to ordering it courts should first consider whether less severe sanctions are adequate. Oliver v. Gramley, 200 F.3d 465, 466 (7th Cir.1999); Shepard v. City of Indianapolis 175 F.3d 1020 (7th Cir. 1999); Crown Life Ins. Co. v. Craig, 995 F.2d 1376, 1383-84 (7th Cir. 1993); Maynard, 332 F.3d at 468. The touchstone in fashioning an appropriate sanction is proportionality to the alleged discovery abuse. See Royal Maccabees

Life Ins. Co., 2001 WL 290308, *9. In weighing the severity of the alleged discovery abuse, we may view it "in relation to all aspects of the judicial process." Barnhill, 11 F.3d at 1367-68.

In seeking dismissal of plaintiff's complaint, defendants describe plaintiff's conduct as a series of egregious discovery abuses on material matters, indicative of a deliberate scheme to abuse the discovery process that has prejudiced defendants and the judicial process. While plaintiff acknowledges that some information was omitted during discovery, she attributes any discovery problems to inadvertent mistakes, unintentional misunderstandings, and memory lapses. She further asserts that any prejudice has since been cured by her cooperation with defendants' post-discovery investigation.

As the above chronology of events should make clear, information was discovered and produced in a piecemeal manner, with plaintiff amending her interrogatory answers in response to defendants' queries and requests. It appears that defendants' discovery of plaintiff's 1996 civil action was the starting point that led to the discovery of other omitted material. For example, after defendants obtained plaintiff's responses to interrogatories in the 1996 action, they noted the names of health treaters not initially disclosed in response to interrogatory no. 9. Then, after receiving documents from Dr. Bank, one of the undisclosed health treaters, defendants discovered that plaintiff had actually been fired from Ada McKinley Services. Plaintiff's employment at Ada McKinley had, until that time, only been disclosed in her resume, which was produced on June 2, 2003. Plaintiff did not amend her interrogatory response to reflect that she was fired until defendants presented her with evidence of her termination.

The above background should also illustrate that the omitted information primarily relates to plaintiff's damages claims. Defendants contend that the recently discovered reports

from prior medical treaters and worker's compensation cases shows that plaintiff had pre-existing physical and emotional injuries. They further argue that plaintiff's termination from Ada McKinley seriously undermines her position that defendants' conduct has prevented her from continuing a career in nursing.

Before analyzing whether plaintiff's omissions during discovery warrant dismissal or other sanctions, we pause to note that defendants' conduct in this case is not beyond reproach. Defendants assert that their conduct is entirely irrelevant to the gravity of plaintiff's discovery abuses, the issue before the court. That may be true in the context of defendants' responses to plaintiff's discovery requests, because parties should address the non-compliance of their counterparts by filing motions to compel, not by holding hostage information that they should produce. However, when defendants' conduct may have contributed to the delay that they now cite as cause for dismissal, their conduct is a relevant aspect of the judicial process and as such should be considered. *See* Barnhill, 11 F.3d at 1367-68. With these observations in mind, we turn to the information that defendants allege was not disclosed during the discovery period, beginning with plaintiff's litigation history.

We begin with the litigation history because it appears the discovery of an undisclosed civil case led defendants to much of the material on which they base the motion to dismiss. In her initial response to interrogatory no. 13, plaintiff objected to the interrogatory as over-broad, and then disclosed that she was a plaintiff in a state court action, "Moore v. Dr. Ramesmy, 1998 c 8298." She also stated that she was a party in several small claims actions. In a letter dated September 6, 2005, defendants asked plaintiff to confirm whether she was involved in 14 actions that were not previously disclosed, including Moore v. Northwestern Memorial Hospital, 96 L 8063. Plaintiff acknowledged that she was a party to the 1996 action

in her September 15, 2005, amended interrogatory responses, and she also noted that both the 1996 and 1998 actions were based on the same incident in which she was pushed by Dr. Ramaswamy. Defendants then tracked down information related to the 1996 action, and found plaintiff's responses to defendants' interrogatories (def. ex. K). In those responses plaintiff described her injuries to include swelling and bruising of her upper arms, bruising of her middle and lower body, and continued depression. She also named five health care treaters that she failed to disclose in her response to interrogatory no. 9.

Plaintiff also neglected to disclose any worker's compensation actions in her initial interrogatory response. After defendants conveyed to plaintiff that they believed she had "at least one if not two workman's compensation cases" (def. ex. L), she amended her interrogatory response to reflect two cases. One case related to a torn muscle she suffered at the University of Chicago, and the other involved Northwestern Hospital (def. ex. O). Plaintiff again amended her interrogatory response after defendants confronted her with five additional worker's compensation cases. Defendants assert that these cases involve injury to plaintiff's hands and have direct bearing on her claim for damages.

Before discussing the materiality and prejudice of these omissions, we first inquire whether plaintiff should have disclosed these legal actions. We conclude that she should have done so. As to the 1996 case, plaintiff contends that its non-disclosure is attributable to her misunderstanding of the case's nature. Plaintiff asserts that she did not believe that the 1996 and 1998 cases were different actions. Defendants contend that this is an unreasonable belief because the 1996 and 1998 actions were separately filed, have distinct case numbers, and name different defendants. Defendants further argue that plaintiff's omissions indicate that she tried to hide her prior litigation in an attempt to secrete information such as the named health

treaters and prior injuries. Despite plaintiff's failures, there is not clear and convincing evidence to support a finding that she intentionally hid the 1996 case and worker's compensation cases. There is not a record of conscious defiance of court orders. *Compare* Downs v. Westphal, 78 F.3d 1252, 1257 (7th Cir. 1996).

Plaintiff asserts that she is merely a lay person and should not be expected to understand the separate nature of the claims. In response, defendants assert that plaintiff is a seasoned *pro se* litigant. Neither of these propositions is satisfactory. However, we do observe that the complaints filed in the 1996 and 1998 actions are nearly identical, with the only difference of any import is the absence of Northwestern Hospital in the 1998 action. Moreover, it is difficult to ascribe to plaintiff intentional deceit to hide the 1996 action, when she disclosed her 1998 claim. Of course, we do not measure plaintiff's intent by the success or failure of any purported scheme, but her disclosure of the 1998 action, given its strong connection to the 1996 claim, militates against finding that she set out to hide the 1996 action. Nevertheless, the two actions are technically distinct, and the former should have been disclosed. A quick search on her attorney's part would have readily revealed its existence.[1]

With respect to the claim filed against Northwestern Hospital, plaintiff claims that her disclosure of the 1998 action was sufficient because it was the "connected personal injury lawsuit." In the 1998 complaint, plaintiff did briefly mention that she had filed a worker's compensation claim for a back injury (def. ex. J at ¶ 9), and that Dr. Ramaswamy had imposed certain restrictions on her work activities. Contrary to plaintiff's assertion, the 1998 action is not "connected" to the worker's compensation claim, which was pending when plaintiff was

---

[1]When an attorney comes to understand that her client's recollection is faulty or deficient (and there clearly did come a time here when that understanding was apparent), it is incumbent upon the attorney to aggressively chase down whatever leads are available to provide accurate answers to appropriate inquiries.

allegedly injured by defendants. Still, the 1998 complaint specifically mentioned a worker's compensation action that was not disclosed in the response to interrogatory no. 13. Defendants thus had notice of this outstanding worker's compensation action, yet they still waited over two years to ask plaintiff about the case. Nevertheless, plaintiff, despite any lack of independent recollection, also had notice of the worker's compensation claim and should have specifically referenced this distinct claim in her initial interrogatory response. If she did not have details of the claim, it would have been proper and reasonable to mention the claim by name and then later supplement the interrogatory response after acquiring any additional information.

Two other incidents led plaintiff to file worker's compensation claims. She filed a claim in 1981 after experiencing chest pains while lifting a patient at Mary Thompson Hospital. Plaintiff believes that she voluntarily dismissed this claim. She also filed claims after suffering a torn pectoralis muscle at the University of Chicago Hospital, and plaintiff's attorneys filed several other claims that were based on the same torn muscle. Plaintiff asserts that she was not aware that these additional claims were filed, and that both sets of claims have no bearing on the present litigation because they relate to events in the distant past and also because the injuries addressed by the worker's compensation claims are distinct from those caused by her September 11, 2001, arrest. Even if these worker's compensation cases are attenuated with respect to subject matter and time, plaintiff still should have disclosed them. Having concluded that plaintiff should initially have disclosed the litigation history that she now includes in her latest amended interrogatory response, we now ask whether the undisclosed information, including prior injuries and medical treaters, and information subsequently discovered such as prior employment, creates prejudice sufficient to warrant dismissal. We turn first to plaintiff's employment history.

Defendants describe plaintiff's failure to include her employment at Ada McKinley in her response to interrogatory no. 2 and her non-disclosure of her termination from that job as the "most devious and the most egregious" discovery abuse. Plaintiff did disclose that she worked at Ada McKinley on June 2, 2003, months before her deposition. She also specifically referenced her resume and relevant tax documents that reflected her employment at Ada McKinley, when she amended her interrogatory answer on September 15, 2005. Yet, defendants did not directly ask her about this employment until September 22, 2005, when they confronted plaintiff with Dr. Bank's report. Thus, defendants had reasonable notice of plaintiff's employment at Ada McKinley, yet they waited over two years and after the close of fact-discovery to make any direct inquiries.

Still, plaintiff failed to provide a truly responsive answer to interrogatory no. 2 until October 6, 2005. That interrogatory asked for more than the identity of former employers and her dates of employment. It also required plaintiff to provide the reasons for her termination. Mere disclosure of Ada McKinley through production of the resume and various tax documents failed to provide the requisite information.[2] Plaintiff's failure to amend her response to interrogatory no. 2 by including Ada McKinley and the reasons for her termination cannot reasonably be attributed to a mistake or memory lapse. Just as defendants had notice of Ada McKinley in June 2003, so did plaintiff, and the plain language of the interrogatory made simple reference to an additional employer without mention of her termination only partially responsive. Plaintiff may have disputed Ada McKinley's rationale

---

[2] Reference to these documents cannot be considered adequate under Fed. R. Civ. P. 33(d). As a threshold matter, Rule 33(d) requires that the records belonged to the "party upon whom the interrogatory has been served," and, by all appearances, the documents did not belong to plaintiff. The relevant documents, which were the recommendation for discharge, authorization to terminate, and a personnel memorandum, belonged to Ada McKinley Services. Defendants subpoenaed Ada McKinley Services, and received these documents on or about October 18, 2005. *See* Def. Reply Ex. F.

for its termination decision, but that difference of opinion provides no basis for non-disclosure.

In light of the fact that plaintiff disclosed her employment with Ada McKinley on June 2, 2003, she was at fault for not disclosing the reasons for her termination. Fault lies with her because omitting the reasons for her termination, or even the mere fact that she was terminated (rather than stating that she left a job and just took some time off as she did in her deposition) was unreasonable. Defendants also obtained documents in which plaintiff failed to disclose her employment at Ada McKinley, such as a Social Security Administration Disability Report (def. repl. ex. G) and a resume (def. repl. ex. H). When viewed together with plaintiff's skirting of her termination at her deposition, these prior omissions suggest that her silence about her termination was willful in that she made a conscious (and repeated) choice to avoid the subject. But this suggestion of willful conduct does not add up to clear and convincing evidence. Moreover, plaintiff's disclosure of her employment at Ada McKinley seriously undermines defendants' portrayal of her conduct as calculated subterfuge. If plaintiff desired to hide her employment and termination from defendants she would not have named Ada McKinley as a former employer. Nevertheless, as the grounds for dismissal are phrased in the disjunctive, our finding of fault is sufficient.

Plaintiff's termination from Ada McKinley is material, as it relates to her claim that defendants' conduct now prevents her from continuing her career in nursing.[3] While the termination is a material issue that plaintiff should have disclosed in her first interrogatory

---

[3] Defendants also highlight plaintiff's employment at Value City, which was not initially disclosed. This was apparently a seasonal position that plaintiff held from October 26, 1999, to December 24, 1999. Defendants were informed that plaintiff was not eligible for rehire because her termination was due to abandonment. *See* Def. Ex. BB. We do not think of this non-disclosure as being material, in that it does not relate directly to plaintiff's ability to work in the nursing field. Further, even if plaintiff's brief stay at Value City could affect her general employability, the job was seasonal, and by its nature, temporary.

response, its omission does not warrant dismissal. Plaintiff's omission did not permanently deprive defendants of any information. Defendants have obtained detailed information regarding plaintiff's discharge from Ada McKinley. Further, plaintiff's non-disclosure of her termination during her deposition or in her interrogatory response was unreasonable, but it was not as severe as the destruction of evidence. The destruction of evidence and consequent deprivation of evidence are often deemed sufficient to justify dismissal. *See* Reddick, 2003 WL 1733560, *16; Krumwiede, 2006 WL 1308629, *10 (plaintiff's spoilation of evidence prevented defendant from relying on information central to claims made against it, warranting dismissal). Defendants rely principally on Quela v. Payco-General American Credits, Inc., 2000 WL 656681 (N.D. Ill. 2000), but the discovery abuses in that case were far more egregious than plaintiff's non-disclosures. In Quela, the court ordered judgment in favor of the plaintiffs as a sanction against the defendants who coerced and threatened a witness to testify falsely. Plaintiff's non-disclosures, although unreasonable, simply do not measure up to the coercion and tampering of a third party witness. *Compare* Fidelity Nat'l Title Ins. Co. of New York v. Intercounty Nat'l Title Ins. Co., 2002 WL 377738 (N.D. Ill. 2002).

Further, the Ada McKinley reports do not preclude plaintiff from securing a job in the nursing field in the future. In her initial Rule 26(a)(1) disclosure, plaintiff named Ms. Garcia, of St. Mary of Nazareth Hospital, who was her supervisor at the time of her arrest on September 11, 2001 (def. ex. A). In her initial response to interrogatory no. 2, plaintiff stated that she worked at St. Mary of Nazareth as a nurse until September 2001, and also until September 2001 at Peoplelink Staffing Solutions in an administrative capacity in a medical environment (def. ex. C). Thus, plaintiff's experience at Ada McKinley did not render her unemployable in the nursing field.

There has been prejudice to the judicial process in that much unnecessary time has been expended, but both parties have contributed to the delays. Punishing only plaintiff by dismissing her case would be an inequitable remedy. We also think it significant that the omitted evidence relates almost exclusively to plaintiff's damages claim, rather than defendants' liability. Moreover, the evidence now in defendants' possession relates to a specific aspect of her damages claim, rather than her entire prayer for relief. While the negative job report may undermine plaintiff's quest for damages, it does not preclude her from securing relief on all grounds presented.

Dismissal is therefore not proportionate to plaintiff's non-disclosure. Defendants do not propose a lesser sanction, but because plaintiff's conduct was unreasonable it cannot go unsanctioned. In fashioning a proportionate sanction, the court has broad discretionary power. Royal Maccabees, 2001 WL 290308, *9 (citing Patterson, 852 F.2d at 283). Defendants may need to again depose witnesses, such as plaintiff's family members or her employers at the time of her September 11, 2001 arrest, regarding her termination from Ada McKinley. If defendants must revisit any of these witnesses, plaintiff shall bear the costs of the depositions. Plaintiff shall also be responsible for any post-discovery costs that defense counsel incurred, such as expenses that resulted from obtaining documents from Ada McKinley. See Sonii v. General Electric, 2003 WL 21541039, *8 (N.D.Ill. 2003) (noting that Rule 37(d) "allows for an award of expenses where a party fails to provide a complete and accurate response to a request for production, unless the party's failure was substantially justified or an award would be unjust"). The imposition of these costs shall mitigate any prejudice. See Parker, 249 F. Supp. 2d at 1013. Plaintiff shall not be responsible for fees in order to reflect defense counsel's tardy inquiries into plaintiff's employment at Ada McKinley.

The imposition of costs, rather than dismissal, is a proportionate and adequate penalty in light of the degree of prejudice, defendants' present possession of the previously omitted information, and the conduct of both parties during and after discovery. *See* Oliver, 200 F.3d at 466. Any necessary questioning into plaintiff's employment history shall be limited to plaintiff's termination from Ada McKinley. The limited scope of this line of questioning will not create any further unreasonable delay.

Next, defendants argue that plaintiff's non-disclosure of prior mental and physical injuries is sufficiently prejudicial to justify the dismissal of her case. In this action plaintiff claims injuries to her right hand, wrist, arm and shoulder as a result of defendants' excessive force during the September 11, 2001 arrest (def. ex. O at 5). She further alleges that her injuries have caused Complex Regional Pain Syndrome, which has led to a loss of use in her right hand and other injuries to her wrist, elbow and arm. Plaintiff claims that defendants' conduct has led to the onset of a debilitating depression that, along with the physical injuries, prevents her from working. Her inability to work has allegedly exacerbated her emotional injuries. Plaintiff's prior mental and physical injuries could affect her damages claims in that those injuries pre-dated her arrest. Defendants argue that dismissal is proper because they have been deprived of information relating to the severity of plaintiff's injuries and the cause of those injuries.

As with the Ada McKinley employment record, the previously omitted material pertaining to plaintiff's injuries has now been disclosed and defendants are able to use that information to challenge plaintiff's damages claims. Further, while plaintiff should have disclosed these prior injuries, the prior omissions do not warrant dismissal. We do not view the information that defendants discovered to be sufficiently prejudicial. For example, in

response to interrogatory no. 6 from the 1996 action, plaintiff described her injuries to include "swelling and bruising of both . . . upper arms. Bruising of middle and lower body" (def. ex. K). Defendants also discovered that plaintiff had a fracture of her right elbow in 1985 (def. ex. U), and a report dated July 20, 2000, in which it was reported that plaintiff's "right arm has pain in the biceps area only" (def. ex. Z). Plaintiff states that these injuries were omitted because she could not remember them, and that she supplemented her poor memory by referencing her medical records. The problem with this position is that even if reference to the documents was sufficient, not all the documents were disclosed to defendants or clearly identified. Still, not every prior injury is material, particularly when the passing of time evidences healing, or when the prior injury does not relate to plaintiff's right hand and wrist, which are the primary physical injuries that she identifies in response to interrogatory no. 8. The injuries described in the 1996 action, the 1985 fracture, and the report of pain in plaintiff's right biceps, do not directly focus on her right hand and wrist. They may be relevant to a damages defense, but they are not sufficiently related to the basis of plaintiff's damages claim to justify dismissal. Moreover, plaintiff's pre-September 11, 2001 injuries did not prevent her from working in the nursing field.

Defendants further argue that plaintiff omitted material pertaining to her mental and emotional health that is material to her damages claim. According to defendants, plaintiff failed to disclose prior medical treaters, specifically Dr. Bank, and also omitted a second suicide attempt.

Even though the extent of plaintiff's prior emotional health and the identities of her medical treaters were not disclosed until her final amendment to her interrogatory responses, she did make general reference to periodic occasions of depression in her initial interrogatory

response. In her October 17, 2003, amended interrogatory response, plaintiff did mention that she had seen Dr. Tan for treatment relating to depression (def. ex. F). Plaintiff also named Dr. Tan as a prior health treater at her deposition (def. ex. G at 261). At her deposition, plaintiff stated that before September 11, 2001, she had seen two other psychiatrists (*id.* at 262-265). However, she could not identify those doctors by name. She did remember that one was a male and the other a female, and also recalled that one worked at Michael Reese Hospital while the other was from Northwestern Hospital. If plaintiff had wanted to hide these physicians from defendants, then she would never have mentioned them during her deposition. Nevertheless, at this point it should have been obvious to both plaintiff and defendants that the interrogatory responses were incomplete, and supplementation was in order. Both parties, but especially plaintiff, should have tracked down these two psychiatrists, and the interrogatory responses should have been amended accordingly. By failing to complete her interrogatory answer, plaintiff was at fault for the non-disclosure. The issue now is whether this non-disclosure justifies dismissal.

Turning to the content of the prior health provider's records, which plaintiff states she did not have until defendants presented them to her, on April 12, 2000, Dr. Bank noted that plaintiff suffered from recurrent depression (def. ex. P). Defendants may use this information and argue that plaintiff suffered from depression prior to their encounter with her, and that this prior depression impacts her current emotional state. However, plaintiff specifically noted in her initial interrogatory response that she dealt with depression in the past (def. ex. C), and also testified to her history of depression at her deposition (def. ex. G at 243-44). On July 7, 2000, Dr. Bank noted that plaintiff had not made any progress since her last visit (def. ex. CC). Dr. Bank also indicated that plaintiff's chart was closed after she failed to appear for a session

and failed to respond to phone calls. Defendants argue that this report rebuts plaintiff's claim

that she was very functional prior to September 11, 2001. However, the report shows that Dr.

Bank closed plaintiff's file more than a year before plaintiff's arrest. Thus, while these reports

provide defendants with additional grounds to challenge plaintiff's damages claim, they do not

have the significance that defendants suggest.

At her deposition, plaintiff testified that on one occasion she attempted to take her life.

After subpoenaing the Rehabilitation Institute of Chicago (RIC), defendants obtained an

outpatient evaluation record for plaintiff dated November 9, 1994 (def. ex. AA). The record

describes her psychological history to include "two suicide attempts by overdose in the past,

most recently five years ago." Defendants assert that this report indicates that plaintiff

perjured herself at her deposition. According to plaintiff, during her RIC evaluation she told

a nurse that she thought about driving her car into a wall, and that this was a suicidal thought

and not an attempt (plf. resp. at 11 n.8). However, the RIC record clearly refers to two

attempts by drug overdose, which defeats plaintiff's "suicidal thought" explanation. Still, it

is difficult to conclude that plaintiff committed perjury at her deposition by stating that she

only attempted suicide once, when, out of all the medical records produced, only the RIC

report mentions a second attempt. The omission of a second suicide attempt pales in

comparison to the rampant self-contradiction and lying that marks cases cited by defendants

in support of dismissal. *See, e.g.,* Montano v. City of Chicago, 2006 WL 733566, *2-3 (N.D. Ill.

2006); Rodriguez v. M&M/Mars, 1997 WL 349989 (N.D. Ill. 1997).

There is no question that plaintiff's initial disclosures regarding her physical and

mental injuries were not complete and that she failed to supplement them in a timely manner.

But the information that defendants subsequently discovered, and now possess, relates to

issues that were mentioned or disclosed, such as plaintiff's initial descriptions of prior depression and emotional problems. We also note that plaintiff's medical reports indicate that she has a history of memory problems (*see, e.g.,* def. exs. P, Q, Y, and Z). Plaintiff's non-disclosures may not be excusable if she was a corporation or a sophisticated business person, but plaintiff is neither.

Proportionality is the touchstone for fashioning a sanction for discovery abuses. Parker, 249 F. Supp. 2d at 1011. Dismissal is proper only in extreme situations, and it is only in those situations that lesser sanctions need not be considered. *See* Dotson, 321 F.3d at 667; Parker, 249 F. Supp. 2d at 1012. When lesser sanctions are appropriate, dismissal is improper. Crown Life Ins. Co., 995 F.2d at 1383-84. Maynard, 332 F.3d at 468. The omissions here were not so extreme so as to warrant dismissal with prejudice. As with her employment record at Ada McKinley, plaintiff did not destroy any information and permanently deprive defendants of material. *Compare* Rhodes, 2005 WL 281221, *2. Neither did she inject false testimony into the judicial process by coercing third-party witnesses. *Compare* Quela, 2000 WL 656681. An adequate punishment here is the imposition of costs for any depositions or related discovery that defendants must now pursue in light of the material disclosed after the close of the discovery period. Defendants assert that they must once again depose plaintiff's medical treaters, but we do not think that is necessary. Those health treaters were presumably asked about their interactions with plaintiff, and any questions concerning material that was not before them would verge into the hypothetical and only compound the delay. Plaintiff shall also be responsible for any post-discovery costs, but not fees, that defendants incurred in obtaining documents relating to plaintiff's prior physical and mental injuries.

Defendants next highlight plaintiff's disclosures relating to her criminal history as

incomplete and part of a larger pattern of non-disclosures. As with her other answers, plaintiff supplemented her response to interrogatory no. 3 through the course of discovery and after it closed. In her initial response, she objected to the interrogatory as over-broad, and then stated that aside from the September 11, 2001 arrest, she had not been arrested in the preceding ten years. In subsequent amendments she disclosed that she was arrested for battery, contributing to the neglect of a child, possession of a controlled substance, possession of a firearm without an ownership identification card, assault and theft. The majority of these offenses occurred more than ten years prior to her response, with the assault charge dating to 1979 and the theft arrest occurring in 1973. Moreover, these are minor offenses, unlike the felony convictions and ten years' imprisonment that the plaintiff in Rodriguez, 1997 WL 349989 *2, failed to disclose. Even if we view plaintiff's piecemeal production as a pattern of non-compliance, her repeated non-disclosures are markedly less severe than the patterns of discovery abuse seen in cases in which dismissal was ordered. See, e.g., Ladien v. Astrachan, 128 F.3d 1051, 1057 (7th Cir. 1997) (misconduct included multiple ex parte communications with the court, untimely production of documents, use of undisclosed exhibits at a deposition, threatening to bring criminal charges if settlement demands went unmet, and attempting to contact defendants in violation of court order). While plaintiff should have taken greater care to disclose her arrest record more comprehensively, the prejudicial effect of the omitted criminal history is minimal, and is not grounds for dismissal or any lesser sanction.

Defendants also latch onto two documents, each titled, "Statement of Continued Disability," as evidence of a disability insurance policy. It turns out that plaintiff does not receive disability insurance, and the documents instead relate to plaintiff's life insurance policy and, specifically, the waiver of premiums due to her disability. In support of that disability,

Dr. Wiedrich completed a portion of the document and listed his diagnosis and treatment prescribed. In her initial responses, plaintiff did not discloses these documents, but in her September 15, 2005 amendment she mentioned them in response to interrogatory no. 17, which asked for "any insurance policies." Defendants insist that, because of Dr. Wiedrich's report, the documents are responsive to interrogatory no. 16, which asks for reports by any health care professional. Regardless of which question the documents best respond to, the documents were also disclosed during fact-discovery (see plf. ex. A), and we perceive no wrongdoing on plaintiff's part.

## CONCLUSION

Defendants' motion to dismiss is denied. However, if defendants wish to once again depose or pursue related discovery of appropriate witnesses on the subjects of plaintiff's employment with and termination from Ada McKinley Services, and her prior physical and mental injuries, plaintiff shall bear all connected costs. Plaintiff shall also bear the costs, but not fees, of any post-discovery expenses that defendants incurred in the process of identifying and obtaining omitted material relating to plaintiff's prior employment, and prior physical and mental injuries.

James B. Moran

JAMES B. MORAN
Senior Judge, U. S. District Court

June 14 , 2006.